AURELIANO TORRES, on behalf of himself
and other similarly situated persons,
known and unknown,

      Plaintiffs,

      v.

NATION ONE LANDSCAPING, INC., and
BRIAN EMMICK, individually,

      Defendants.

No. 12 CV 9723

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Aureliano Torres brought this action against his employer, defendant Nation One Landscaping and its CEO, defendant Brian Emmick, for owed wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq.* Torres alleges that Nation One did not pay him overtime wages, took unauthorized deductions out of his paycheck, and failed to pay him the state-mandated minimum wage. Four other Nation One employees opted in to join Torres's FLSA claim, and Torres represents a class of Nation One employees in his state-law overtime and unauthorized deductions claims. Torres moves for summary judgment on all counts. For the following reasons, that motion is granted in part and denied in part.

# I.    Legal Standards

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding whether a genuine issue of material fact exists, courts must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

Both the moving party and the nonmoving party must cite "particular parts of materials in the record" to support their respective assertions—the absence or presence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c). To facilitate this process, Local Rule 56.1 requires the moving party to file a statement of material facts "to which the moving party contends there is no genuine issue and that entitle[s] the moving party to a judgment as a matter of law." L.R. 56.1(a). It also requires the nonmoving party to file a concise response and permits that party to submit additional material facts as necessary. L.R. 56.1(b). All statements under Local Rule 56.1 must contain short numbered paragraphs with specific references to supporting admissible evidence in the record. L.R. 56.1 (a), (b). In some instances, the parties' filings failed to cite specific pages or paragraphs. District courts are not "obliged" to "scour the record looking for factual disputes," and do not consider

conclusory allegations, conjecture, or argument in Local Rule 56.1 statements. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *see also Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004). An asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted.

## II.    Background

Brian Emmick was the owner and chief executive officer of Nation One, a landscaping company. [129] ¶ 9; [132] ¶ 13.[1] Emmick handled the daily operations of Nation One and had final authority over Nation One's policies. [129] ¶ 19. He was in charge of hiring, supervising, paying, and firing employees. [129] ¶¶ 10–14. As owner and CEO, Emmick engaged a payroll service to handle Nation One's payroll. [129] ¶ 16. Emmick was an authorized signer on the Nation One payroll banking account. [129] ¶ 15. Nation One later transitioned to using internal bookkeepers for payroll; those bookkeepers continued to report to Emmick as the highest authority on payroll for Nation One. [129] ¶ 17. Emmick relied on others and was uninvolved and unaware of how Nation One's payroll operated. [120-3] at 70:22–71:12; *see also* [120-3] at 72:16–21.

Nation One had a practice of compensating its employees for all hours worked at the regular rate and of not compensating its employees' overtime hours at the required time-and-a-half rate. [129] ¶ 42. For employees who had worked

---

[1] Bracketed numbers refer to entries on the district court docket. The facts are largely taken from Nation One's response to Torres's Local Rule 56.1 statement, [129], and Torres's response to Nation One's Local Rule 56.1 statement, [132], where both the asserted fact and the opponent's response are set forth in one document.

overtime during a given pay period, defendants would cut those employees two checks on payday: the first was a payroll check for forty hours at the regular rate, and the second was a business check for the additional hours, also at the regular rate. [129] ¶ 43. Additionally, Nation One had a practice of deducting $4.84 from its employees' weekly wages for company uniforms and half an hour of pay from its employees' daily wages for a lunch break. [129] ¶¶ 58, 65.

Between 2011 to the present, defendants employed Torres, the opt-ins, and members of the certified class. [129] ¶¶ 1, 4–7, 20. During this time, these employees routinely worked more than eight and one half hours per day and more than forty hours per week. [129] ¶¶ 27–41. In 2013, the Illinois Department of Labor notified defendants of its intent to investigate Nation One's time and payroll records for "all current and past employees who worked during the period of May 1, 2011 to July 31, 2013, which records by law you are required to maintain." [129-3] at 2. The letter requested that defendants "assemble and have available the records set forth in 'Attachment A' of this letter for the period to be audited <u>and</u> have available for an interview a company representative who is knowledgeable about the structure and management of the company." *Id.* Less than one month later, IDOL completed the audit and found that Nation One was not in compliance with the IMWL, 820 ILCS § 105/1-15, because it failed to pay its employees the required rate for overtime worked. [120-4] at 2; [129] ¶ 44.

Torres worked for Nation One from approximately March 2011 to November 2011. [129] ¶ 1. He typically worked Monday through Friday from 6:40 a.m. to

either 5:15 p.m. or to 6:30 p.m. [129] ¶¶ 27–28. He also usually worked two Saturdays per month from 6:40 a.m. to either 4:00 p.m. or to 4:20 p.m. [129] ¶¶ 29–30. He earned $9.50 per hour. [129] ¶ 46. He regularly performed work before he clocked in and after he clocked out for his shift, for which he was not paid. [120-1] at 4, ¶¶ 26, 28–32. Half an hour was automatically deducted from his daily pay, even though his lunch break was interrupted and he was called back to work at least three times per week. [120-1] at 4, ¶¶ 33–36. In total, he was shorted eight hours of pay per week. [120-1] at 4, ¶ 25. Since Torres was not paid for all of the time he worked, his wages often fell below the state-mandated minimum wage. [129] ¶ 68.

The opt-in plaintiffs provide similar facts for their tenures with Nation One. Eliseo Marcelo, Marco Marcelo, and Andrez Gutierrez regularly performed work before they clocked in and after they clocked out, and they were not paid for this pre- and post-shift work. [120-1] at 17, ¶¶ 29, 31–36; [120-2] at 4, ¶¶ 26, 28–33; [120-2] at 16, ¶¶ 29, 31–36. For each of these plaintiffs, as with Torres, Nation One deducted half an hour of wages from their daily pay, even though their lunch breaks were regularly interrupted—as a result, they were not paid for one and one-half hours of work per week. [120-1] at 17–18, ¶¶ 37–41; [120-2] at 4–5, ¶¶ 34–38; [120-2] at 16–17, ¶¶ 37–41. All of the opt-in plaintiffs, including Alfonso Garcia, typically worked over 40 hours per week, and each received various payments in compensation after the IDOL audit. [120-1] at 16, ¶ 17, at 18, ¶ 45; [120-2] at 5, ¶ 42; [120-2] at 15, ¶ 16, at 17, ¶ 45; [120-2] at 28, ¶¶ 15, 21.

Defendants maintained pay and time records for their employees, but not all of the relevant records were produced during discovery.[2] [129] ¶¶ 69–70. In 2011, defendants say they gave their time and payroll records to the payroll service it had engaged; that business is now defunct and it never returned the documents to defendants.[3] [120-4] at 27, ¶ 37. Sometime thereafter, defendants managed their payroll internally. [120-3] at 42:11–18. Defendants' staff produced to plaintiffs all of the time and payroll documents the company had in its possession; Emmick was uninvolved in production for discovery. [120-3] at 44:21–45:5. In December 2014, ADP took over Nation One's payroll system. [131-1] at 2. ADP produced its payroll records for Nation One from the end of 2014 through 2016. *Id.*

CEO Emmick was also absent from the IDOL audit process. [120-3] at 42:11–18. Since defendants have not identified which records it turned over to IDOL, it remains a mystery which records IDOL reviewed and which documents formed the basis for the audit's conclusions.

## III.    Analysis

### A.    Applicability of the FMLA, the IMWL, and the IWPCA

Defendants admit they were the "employer" of Torres, the opt-ins, and the class during the relevant time period under the FLSA, the IMWL, and the IWPCA. [129] ¶¶ 21–22; 29 U.S.C. § 203(d); 820 § ILCS 105/3(c); 820 ILCS § 115/2. The only

---

[2] From 2011 to 2013, Nation One used a manual punch time clock system to track its employees' hours. [132] ¶ 3. It then upgraded to an electronic system and later to a computer system. [132] ¶ 4.

[3] Defendants were reckless in failing to safeguard relevant documents during discovery. [116].

dispute as to the applicability of these three statutes to this lawsuit pertains to opt-in plaintiff Gutierrez. Defendants argue that Gutierrez was exempt from the overtime pay requirements of the FLSA and the IMWL. [129] ¶ 23.

The FLSA exempts employees who are employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The implementing regulations further define this phrase to mean any employee: "(1) compensated on a salary or fee basis at a rate of not less than $455 per week […]; (2) [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). The IMWL exemption is the same. 820 ILCS § 105/4a(2)(E); *see also Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 376 (7th Cir. 2005).

Gutierrez's salary in 2013 and 2015 exceeded the statutory requirement, thereby satisfying the first element. [129] ¶¶ 55–56. With respect to the second element, defendants say Gutierrez was a crew supervisor who managed job sites, directed workers on his crew, made decisions in the field, and was free from direct supervision in the field. *Id.* Support for this statement comes from Emmick's affidavit. Emmick, however, has virtually no personal knowledge of what went on in the field and therefore cannot provide an evidentiary foundation for this statement. By contrast, Gutierrez's affidavit states that as a crew leader, he completed job assignments "alongside the crew" in the field and did not work in the Nation One

office. [131-1] at 29, ¶¶ 4–5. He was "responsible for showing the crew how to perform their job assignments," but in no way did he describe having the ability to exercise discretion or independent judgment in this role. Defendants have not offered evidence to support their assertion that Gutierrez performed office or non-manual work in furtherance of the management of Nation One. As such, the second and third elements are not met and Gutierrez is not exempt from the overtime requirements under the FLSA, or under the IMWL by extension.

In this action, the FLSA applies to Torres and the opt-ins, and the IMWL and the IWPCA apply to Torres and the class (of which the opt-ins are a part).

## B. Improper Payment of Overtime Wages Under the FLSA and the IMWL

Given the common purpose and similar language of the FLSA and the IMWL, courts analyze both statutes the same. *Lewis v. Giordano's Enters.*, 397 Ill.App.3d 581, 592–593 (1st Dist. 2009); *see also Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993). Both statutes require an employer to pay one and one-half times the regular rate of compensation for any hours an employee works in excess of forty hours per workweek. 29 U.S.C. § 207(a); 820 ILCS § 105/4a.

Plaintiffs argue that they were not adequately paid for the hours of overtime they worked each week because of defendants' practice of paying for all hours worked at the regular rate. [129] ¶ 43. Torres's and the opt-ins' affidavits state that during the relevant time period, defendants paid them at their regular hourly rate for all hours worked in one payroll check for forty hours and another personal check for hours worked in excess of the first forty. [120-1] at 3, ¶ 19; [120-1] at 16, ¶ 23, at

18, ¶¶ 47–48; [120-2] at 3, ¶ 20, at 5, ¶¶ 44–45; [120-2] at 15, ¶ 23, at 17–18, ¶¶ 47–51; [120-2] at 28, ¶ 18. Defendants admit to paying its employees for overtime at the regular rate, but they claim they only did so until they received the results of the IDOL audit. [129] ¶ 43. After the audit, defendants say they changed their policy and paid employees time and one-half for all overtime worked. [132] ¶ 9. To support these statements, defendants point to Emmick's affidavit. *Id.*; [129-1] ¶¶ 11, 21. Emmick's deposition testimony, however, reveals he has no personal knowledge about Nation One's payroll or if employees were paid. [120-3] at 42:19–43:24, 72:16–21, 74:1–77:7. Consequently, Emmick's affidavit is inadmissible on the question of what employees were paid, and there is no evidence to support defendants' statement that their two-check scheme of paying employees at the regular rate regardless of overtime worked ended after the IDOL audit.

Nevertheless, in their response brief, defendants argue that the "discrepancies" between Torres's statements of fact about overtime and the results of the IDOL audit create an issue of fact that precludes summary judgment because the audit was based on Nation One's time and payroll records. [128] at 4. But defendants never identified which documents it provided to IDOL for the audit. When Emmick was asked if he provided IDOL with documents that would show all hours paid to each worker, he replied: "I did not handle any of it. I wasn't there." [120-3] at 42:11–18.

The charts summarizing IDOL's findings only report violations in 2012 and 2013. [120-4] at 3–16. Torres's name does not appear in the chart of employees who

were owed payment by Nation One, which makes sense if IDOL did not have Nation One's 2011 records, or the like. IDOL's letter of non-compliance does not shed any light on the audit process. It does not describe which documents it reviewed or which time periods it considered. [120-4] at 2. Importantly, the letter does not state that its determination was exhaustive or binding. *Id.* This letter and its chart, therefore, do not support a finding that IDOL's audit caught every overtime violation from 2011 to 2013 and for all Nation One employees. This leaves open the possibility that Nation One failed to pay other employees their overtime wages, and those instances were not revealed by the IDOL audit. In sum, there is no meaningful "discrepancy" here and certainly no issue of fact that precludes summary judgment. Defendants offer no evidence from which a reasonable jury could find that Nation One did not violate overtime wage requirements under the FLSA, as to Torres and the opt-ins, and under the IMWL, as to Torres and the class. Plaintiffs are entitled to summary judgment.

### C. Violations of the IWPCA

The IWPCA requires employers to pay the final compensation in full at the time of separation, and no later than the next regularly scheduled payday for that employee. 820 ILCS § 115/5. It also prohibits employers from making deductions from its employees' wages unless the deductions benefit the employee or the employee gave express written consent at the time of the deduction. 820 ILCS § 115/9.

###### 1. Unlawful Uniform Deductions from Torres and the Class

Torres argues that defendants had a practice of taking deductions for uniforms from its employees' wages without written authorization. Defendants respond that all employees, including Torres and the opt-ins signed employee handbooks before they began working for Nation One. [132] ¶ 1. Although this statement is only supported by Emmick's affidavit, as CEO, he has sufficient personal knowledge on this topic. Emmick explained the handbook signing process in his deposition: "When an employee is hired, they sign an employee handbook when they are hired at the date and time and they read through the whole packet." [120-3] at 57:15–20. Torres notes that defendants have not produced executed handbooks for all employees and that the one executed handbook that defendants submitted was signed by Torres in 2012, when he was no longer an employee. But this does not undermine the admissibility of Emmick's testimony that employees signed handbooks.

Nation One's handbook includes a "Uniforms" section, which says: "Each employee shall be issued 5 uniforms and have the expense deducted from their weekly payroll." [129-2] at 14. Defendants argue that the employees' signature on the handbook provided express written consent for the deductions. Defendants admit that they did not secure written authorization at each pay period when the deduction was made from Torres and the class. [129] ¶ 59. Torres argues that this admission is dispositive as to defendants' liability under the IWPCA. He is correct. The IWPCA permits employers to make deductions from its employees' wages when an employee freely gives express consent "at the time the deduction is made." 820

11

ILCS § 115/9. Since defendants admit their failure to obtain express consent from each employee each time a deduction was made, the uniform deductions were unlawful under this part of the statute.

Defendants argue that the uniform deductions are permissible under the IWPCA because the statute permits deductions to benefit the employee. Plaintiffs do not dispute—with admissible evidence—that Nation One provided uniforms and required employees to pay for a laundry and repair service.[4] [132] ¶ 11. But there is no evidence that Nation One subsidized the cost of the rentals or that Nation One received a discounted rate for the group, which it shared with the employees when it passed the costs for the service off onto the employees. The record only shows that Nation One employees were required to wear uniforms and that the employees were forced to pay the costs for the uniform service. Without any evidence that this compelled payment by deduction was a benefit, a reasonable jury could not find that the exception under the IWPCA applies.

2.    *Unlawful Lunchtime Deductions from Torres*

Torres complains that defendants automatically deducted half an hour of pay from his daily pay for lunchtime, even though his lunches were frequently interrupted by being called to return to work. His affidavit, which is based on his personal knowledge, supports these statements. [120-1] at 4, ¶¶ 33–36. In response,

---

[4] Under the section "Appearance," the employee handbook stated: "As an employee of Nation One Inc., we expect you to present a clean and professional appearance when you represent us, whether that is in, or outside the office. [...] Employees are expected to report to work neat & clean wearing their uniform as described below under Uniforms." [129-2] at 2 (emphasis original).

defendants admit to the automatic lunchtime deduction, but dispute that employees' lunches were ever interrupted. [129] ¶ 65. Defendants cite Emmick's affidavit as support, which states that the policy[5] in Nation One's handbook allows each employee to receive one half hour for lunch; that no employee ever complained to Emmick about being shorted their lunchtime; and that Emmick was unaware the employees were not being allowed to take the full half an hour for lunch. *Id.*; [129-1] ¶ 12. Emmick emphasized his lack of knowledge about lunchtime interruptions and lunchtime deductions in his deposition: "I'm unaware if they don't take a lunch or not. I'm not in the field. The foreman handles that." [120-3] at 54:5–7; [120-3] at 28:9–14. Again, Emmick's lack of personal knowledge as to the relevant subject— here, lunchtime interruptions and automatic deductions—renders his affidavit testimony about that subject inadmissible.

Relatedly, defendants offered a statement of fact: "The normal work day is 8 and 1/2 hours with a 1/2 [hour] lunch break." [132] ¶ 5. Defendants point to an identical statement in Emmick's affidavit as support. [129-1] at 17. Torres responds by saying employees regularly worked more than 8 and ½ hours per day and cites his affidavit and the opt-ins' affidavits, which explain that their lunches were regularly interrupted and that the half an hour lunchtime deduction was made from their pay even when they had worked through their lunchtimes. [132] ¶ 5; [120-1] at

---

[5] The "Workday" subsection says: "The normal workday is eight (8 ½) hours for hourly workers, with 40 hours paid (see <u>Lunch Period & Break Time</u>) as a normal work week." [129-2] at 7 (emphasis original). The "Lunch Period & Break Times" section says: "Lunch breaks are not scheduled for any certain time during the workday for field employees. […] Lunch will be no more than 30 minutes. The employee will not be paid for lunch." [129-2] at 9.

4, ¶¶ 33–36; [120-1] at 17–18, ¶¶ 37–41; [120-2] at 4, ¶¶ 34–38; [120-2] at 16–17, ¶¶ 37–41. These individuals' descriptions of what happened to them, personally, refutes any claim Emmick made about the "normal work day" (especially since he has no personal knowledge of what happens in the field at lunchtime) and likewise refutes any general Nation One policy about how lunchtime was supposed to be taken and accordingly deducted.

The undisputed record, therefore, shows that Torres frequently worked through his lunchtime. Defendants do not argue that this deduction was valid under the IWPCA because it benefitted Torres or because Torres consented to it (and as discussed above, signing the handbook was not consent given at each time the employer took the deduction). Torres is entitled to summary judgment on his IWPCA claim related to the lunch deduction.

### 3.    *Unpaid Pre- and Post-Shift Work by Torres*

Torres says he was required to arrive at the shop fifteen minutes before the start of his shift in order to load equipment onto the truck (in preparation for his shift), but he was not allowed to clock in until he left for the first job site. [129] ¶ 62. Similarly, he was required to stay at work approximately fifteen minutes after he clocked out from his shift in order to unload the equipment from his truck into the shop. [129] ¶ 63. He was not compensated for this required pre- and post-shift work. [129] ¶ 64. As support, Torres points to admissible statements in his affidavit, [120-

14

1] at 4, ¶ 25–27, and to a policy in Nation One's handbook, [129-2] at 7.[6] *Id.* That policy, under the "Time Clock and Time Cards" subsection, says: "Where applicable, Nation One Inc. employees must punch in before beginning their work shift and punch out at the end of their shift. All such employees are expected to work their entire shift. Employees must be 'clocked-in' to be paid […]. <u>***** **Please note that we prefer you to report approximately 5-10 minutes early so that you can prepare your personal equipment and are ready to start promptly on time.** *****</u>" *Id.*

Defendants deny these statements and attempt to controvert them by pointing to a paragraph in Emmick's affidavit, to Nation One's handbook (without a specific reference to a particular section), and to IDOL's charts that summarize the amounts Nation One failed to pay certain employees (again without a specific reference to a particular section). [129] ¶¶ 62–64.

Emmick's affidavit states: "Nation One employs [sic] were not shorted pre and post shift work. They were paid for all time worked. The Employee Manual, states that it is preferred, not required, that employees arrive 5 to 10 minutes early so they can start their shifts promptly." [129-1] ¶ 12. During his deposition, Emmick revealed that he has no personal knowledge about specific employees' shifts, including how they were supposed to clock in and out. But when asked if workers "ever perform services before they punch in," Emmick replied: "No, they do not."

---

[6] The Opt-ins made similar statements in their affidavits about required but unpaid pre- and post-shift work. [120-1] at 17, ¶¶ 29, 31–36; [120-2] at 4, ¶¶ 26, 28–33; [120-2] at 16, ¶¶ 29, 31–36.

[120-3] at 26:18–20. Emmick's testimony is not admissible; it is conclusory and it lacks personal knowledge. The employee handbook includes statements indicating that employees do not have a normal workday, that they are expected to arrive early, and that pay does not begin until employees clock in. [129-2] at 3, 7. But these statements do not suggest that Torres did not engage in pre- and post-shift work—they support the claim that if Torres worked before clocking in and after clocking out, he was not paid for it. IDOL's charts do not contribute to the analysis here because its determination was not exhaustive or binding. Viewing Emmick's affidavit and deposition testimony together with the policies in Nation One's handbook, there is no admissible evidence to controvert Torres's statement.

The undisputed record demonstrates that Torres was never paid for required pre- and post-shift work he performed. The IWPCA requires that employees be paid no later than the next regularly scheduled payday. That date has long since passed. As such, defendants violated the IWPCA.

### D.   Violation of the Minimum Wage Law Under the IMWL

The IMWL requires employers to pay their employees the minimum wage of $8.25 per hour. 820 ILCS § 105/4. Torres says he was not compensated for all the time he worked, due to the lunchtime deductions and the nonpayment for pre- and post-shift work, and that as a result, his wages often fell below the state-mandated minimum wage. Specifically, Torres states he was shorted eight hours of pay each week. [129] ¶ 61. Defendants deny this statement of fact and cite Emmick's affidavit for support. *Id.*; [129-1] ¶ 12. Emmick has no personal knowledge about how many hours Torres worked or about how much Torres was paid in any given week;

consequently, the relevant paragraph in his affidavit does not controvert Torres's statement of fact. The effect of the eight-hour shortage was as follows: on weeks where Torres received a weekly wage of $412.78 when he actually worked 51.45 hours, his hourly wage was $8.02 ($412.78 divided by 51.45 hours), which is $0.23 below the state-mandated minimum wage. On such weeks, defendants violated the IMWL. Torres is entitled to summary judgment on this issue.

### E.    Damages Calculations

Defendants failed to properly safeguard relevant documents during discovery. [116]. As a sanction for their misconduct, defendants cannot dispute any reasonable estimate by Torres, the opt-ins, and the class of their damages. *Id.* Moreover, in *Anderson v. Mount Clemens Pottery Company*, the Supreme Court held that when an employee is unable to establish the time he spent working without compensation because of his employers' failure to comply with its statutory duty to keep relevant records, courts should not penalize the employee and instead should "hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S. 680, 687 (1946). If the employee can make that showing, the burden then shifts to the employer to show that the employee's evidence is unreasonable. *Id.* at 687–688. If the employer cannot undermine the credibility of the employee's evidence, the court may award damages to the employee based on the employee's approximations. *Id.* at 688. "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that

17

would be possible had he kept records in accordance with the requirements." *Id.* In these circumstances, a court may award damages so long as the employee's estimates are reasonable. *Id.*

### 1. *Overtime Damages for Torres and the Opt-Ins*

Torres and the opt-ins describe in their affidavits how much overtime they typically worked (broken down by relevant months or seasons, during which times they were more or less busy) and how many hours they were typically "shorted" per week based on unpaid pre- and post-shift hours worked and unpaid lunchtime hours worked. They tabulated this information in their own separate spreadsheets, calculated the relevant interest rates, and arrived at a sum total of wages owed to them by Nation One under the FLSA. Their spreadsheets also included an estimate of deductions and erroneously included the "Total Unlawful Deductions" in the sum of each opt-ins' "Total OT Violation." The collective action that the four individuals opted into was limited to the FLSA overtime wages claim. [81], [82], [83], [84]. The FLSA claim in this case does not provide for recovery for unlawful deductions like the ones alleged here. These portions of plaintiffs' spreadsheets will be ignored.

With respect to the portions of the spreadsheets focusing on overtime wages under the FLSA, plaintiffs appeared to calculate damages by multiplying the individual's pay rate by the weekly hours paid and adding the statutory interest. This theory is reasonable, but some clarification is needed before entry of judgment. For example, Marco Marcelo's affidavit contains two estimates of the sum of his owed overtime wages, $20,856.18 and $20,782.78, [120-2] at 5, ¶¶ 46–47, neither of which is the same as the estimate contained in Marco Marcelo's spreadsheet,

$20,782.00, [120-2] at 12. Plaintiffs must resubmit damages calculations consistent with this order.

Defendants take issue with these calculations for other reasons: they include wages owed in 2012 and 2013, which were not found in IDOL's audit of the same time period and which do not appear in IDOL's summary charts, and they do not wholly defer to ADP's records after 2014. Defendants argue that plaintiffs' estimates are not credible because there are discrepancies between the estimates and the IDOL audit. The existence of a discrepancy, however, does not end the inquiry. It is permissible to rely on an employee's recollection when there are no employer records, so long as that recollection is not "flatly refuted" by other evidence in the record or so "internally inconsistent or implausible on its face" that "no reasonable person would believe it." *Melton v. Tippecanoe Cty.*, 838 F.3d 814, 819 (7th Cir. 2016) (citations omitted).

An audit is only as good as the evidence on which it is based. Since neither defendants nor IDOL have identified which Nation One documents IDOL reviewed and since IDOL never claimed that its audit was exhaustive or binding, it is plausible that additional overtime violations occurred before, during, or after the audit, for which defendants are liable. The IDOL audit, therefore, does not "flatly refute" the recollections described in the affidavits.

ADP's records only capture Nation One's time and payroll records from December 2014 through 2016. They do not capture the uncompensated time related to the automatic lunchtime deduction and the pre- and post-shift work, nor do they

19

capture any time from before December 2014 when Torres and all of the opt-ins except Gutierrez worked. Defendants, therefore, have not shown that ADP's records refute plaintiffs' estimates. Summary judgment is granted in part with respect to plaintiffs' theory of calculating overtime wages.

### 2. IMWL and IWPCA Damages for the Class

On behalf of the class, Torres argues that: (1) each class member is entitled to the overtime premium of his then-hourly wage rate multiplied by the average number of hours worked by Torres and/or the opt-ins in that workweek, less any payment the class member received as a result of the IDOL audit, plus the statutory interest of two percent per month from the date of underpayment; and (2) each class member is entitled to $4.84 for each week the class member worked, plus statutory interest of two percent per month from the date of the underpayment (to recover for the unlawful deduction for uniform costs).

Although defendants admit that all members of the class were similarly situated Nation One employees during the relevant time period, [129] ¶ 24, they oppose Torres's approach for determining overtime wages because it is based on calculations that defendants believe are "fabricated" and "too speculative." [128] at 5, 9. Representative sampling, like Torres's proposal, can be used to establish liability on behalf of a class, just as it can on behalf of an individual plaintiff. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016). It is especially useful in filling an "evidentiary gap" created by an employer that failed to keep required records. *Id.* at 1047. In order to be admissible, though, the representative evidence must be statistically adequate and based on plausible assumptions. *Id.* at 1049. The

proposed method in this action is based on a very limited sample size, which Torres has not proved to be statistically adequate. Torres has not carried his burden of proof on this issue. Even assuming this formulaic calculation should be admitted, resolving the persuasiveness of the calculations is almost exclusively the province of the jury. *Id.* Summary judgment on the issue of class damages for overtime wages, therefore, is improper.

On the other hand, summary judgment on the issue of class damages for the deductions is proper. Torres has established that defendants automatically deducted $4.84 from its employees' weekly wages during the relevant time period. He has also properly assessed the statutory interest for these violations: 2% per month from the date of underpayment. Since Nation One applied this deduction consistently over time and uniformly as to all of its employees, there is no need for representative sampling. Torres reasonably calculates his IWPCA damages to be $393.30. [120-1] at 8. His proposal that each class member should receive $4.84 for each week worked, plus the relevant statutory interest is a sufficient approximation for the damages defendants owe. Plaintiffs should submit damages calculations for the class members consistent with this order.

## IV. Conclusion

Torres's motion for summary judgment, [117], is granted in part and denied in part. The motion is granted as to defendants' liability in Counts I through V. The motion is granted as to the theory of how to calculate damages for Torres and the opt-ins under the FLSA, for Torres under the IMWL, and for Torres and the class

under the IWPCA. The motion is denied as to the calculation of class damages under the IMWL.

ENTER:

Manish S. Shah
United States District Judge

Date: 12/5/2016